# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

EMILIA OLGUIN,                              )          Case No. CV 08-6548-JEM
                                           )
                          Plaintiff,        )
                                           )          MEMORANDUM OPINION AND ORDER
           v.                              )          REVERSING DECISION OF
                                           )          COMMISSIONER AND REMANDING FOR
MICHAEL J. ASTRUE,                         )          PAYMENT OF BENEFITS
Commissioner of Social Security,           )
                                           )
                          Defendant.        )
_____)

## PROCEEDINGS

On October 28, 2008, Emilia Olguin ("Plaintiff" or "Claimant") filed a complaint seeking

review of the decision by the Commissioner of Social Security ("Commissioner") denying her

claim for disability insurance benefits under Title II of the Social Security Act.  The

Commissioner filed an Answer on February 9, 2009.  On June 22, 2009, the parties filed a Joint

Stipulation ("JS").

The matter is now ready for decision.  After reviewing the pleadings, transcripts, and

administrative record ("AR"), the Court concludes that the Commissioner's decision should be

reversed and remanded for an immediate award of benefits.

///

///

**BACKGROUND**

Plaintiff is a 50 year old female who has the following severe impairments:  cubital tunnel syndrome, cervical spine musculoligamentous strain, and depressive disorder.  (AR 16.) Plaintiff alleges an onset date of July 29, 2005.  (AR 14.)

Plaintiff's claims were denied initially on November 20, 2006, and on reconsideration on March 20, 2007.  (Id.)  Plaintiff filed a timely request for hearing on April 30, 2007.  (Id.)  She appeared and testified at a hearing before the ALJ on January 16, 2008, in Los Angeles, California.  (Id.)

The ALJ issued an unfavorable decision on March 6, 2008.  (AR 11-28.)  The ALJ concluded that Claimant has not been under a disability within the meaning of the Social Security Act from July 29, 2005, through the date of this decision.  (AR 14.)

The ALJ determined that Claimant suffers from the severe impairments of fibromyalgia, cubital tunnel syndrome, cervical spine musculoligamentous strain, and depressive disorder. (AR 16.)  The ALJ also determined that Claimant is unable to perform her past relevant work but is capable of performing other work.  (AR 26-28.)

Plaintiff filed a timely request for review of the ALJ's unfavorable decision, which was denied by the Appeals Council on August 12, 2008.  (AR 1-4.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1.  Whether the ALJ erred in weighing the treating source evidence?

2.  Whether the ALJ erred in evaluating Plaintiff's subjective complaints?

3.  Whether the ALJ erred in determining Plaintiff's residual functional capacity ("RFC")?

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "'more than a mere scintilla' but less than a preponderance."  Saelee v.

2

1  Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401

2  (1971)).

3         Substantial evidence is "such relevant evidence as a reasonable mind might accept as

4  adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and

5  citations omitted). This Court must review the record as a whole and consider adverse as well

6  as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

7  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must

8  be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court

9  must consider the entire record as a whole and may not affirm simply by isolating a 'specific

10 quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879

11 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

12                                    **DISCUSSION**

13        The Court concludes that the ALJ's determination that Claimant is not disabled is

14 unsupported by substantial evidence. The ALJ's rejection of the fibromyalgia RFC of

15 rheumatologist Dr. Salick was not supported by clear and convincing or specific and legitimate

16 reasons based on substantial evidence. An impartial vocational expert concluded that Plaintiff

17 was unable to work based on the limitations that Dr. Salick specified in his RFC. (AR 55-57.)

18 The ALJ's discrediting of Plaintiff's testimony about the severity of her pain was not supported

19 by specific, clear and convincing reasons.

20        Plaintiffs' evidence, which must be credited, requires a finding of disability. As there are

21 no outstanding issues to be resolved, benefits must be awarded.

22        **A.    The Sequential Evaluation**

23        The Social Security Act defines disability as the inability "to engage in any substantial

24 gainful activity by reason of any medically determinable physical or mental impairment which

25 can be expected to result in death or . . . can be expected to last for a continuous period of not

26 less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has

27 established a five-step sequential process to determine whether a claimant is disabled. 20

28 C.F.R. §§ 404.1520, 416.920.

The first step is to determine "whether the claimant is presently engaging in substantially gainful activity." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ, however, must consider the combined effect of all the claimant's impairments on his or her ability to function, regardless of whether each alone is sufficiently severe. Id. Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id.

Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141.

Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that, at all times, the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, however, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). In this case, the ALJ determined that Claimant was unable to perform her past relevant work. Thus, the Commissioner had the burden to prove that Plaintiff may perform other gainful activity.

**B.     The ALJ Erred In Concluding That Plaintiff Is Not Disabled**

Plaintiff was diagnosed with fibromyalgia in 2002. (AR 257, 261.) In 2004, she suffered a fall at work that resulted in cubital tunnel syndrome (elbow nerve injury) and cervical spine

4

musculoligamentous strain.  (AR 16-17, 163, 164.)  Dr. Salick, a rheumatologist, opined that the injuries caused by the fall at work aggravated Claimant's fibromyalgia.  (AR 416.)  Plaintiff also came to suffer depressive disorder because of inability to get relief from her pain.  (AR 16, 19.) These physical and mental impairments are undisputed (AR 116), as is her inability to return to her previous work.  (AR 26.)  The issue before the Court is whether the combination of Claimant's impairments prevent her from other gainful activity.  The Commissioner had the burden on this issue.  The ALJ failed to meet that burden because the ALJ's determination that Plaintiff could engage in alternative employment did not consider her fibromyalgia.

Ninth Circuit cases have determined that fibromyalgia can be disabling.  Benecke v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004).  In Benecke, the Ninth Circuit described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.  *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n. 1 (8th Cir. 2003).  Common symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease.  *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th Cir. 1991).  Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community.  The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.  The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis.  *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

1  Id.; see also Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000) (reversing ALJ decision denying

2  benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (upholding benefits

3  for fibrositis, now known as fibromyalgia).

4         Jordan v. Northrop Grumman Corp., 370 F.3d 869, 877 (9th Cir. 2003), a case in which

5  benefits were denied for fibromyalgia, recognized that the accepted diagnostic test is that

6  Plaintiff must have pain in 11 of 18 tender points.  See also Rollins v. Massanari, 261 F.3d 853,

7  855 (9th Cir. 2001) (11 of 18 tender points).  Objective tests such as myelograms are

8  administered to rule out other diseases and alternative explanations for the pain but do not

9  establish the presence or absence of fibromyalgia.  Jordan, 370 F.3d at 873, 877.  It cannot be

10 objectively proved.  Id. at 877.  The symptoms can be worse at some times than others.  Id. at

11 873.  The Ninth Circuit recognizes fibromyalgia as a physical rather than a mental disease.  Id.

12        In this case, Plaintiff's fibromyalgia was undisputed.  A rheumatologist, several treating

13 orthopedists, and other medical professionals who examined Plaintiff after the 2004 fall

14 acknowledged her fibromyalgia.  (AR 166, 182, 219, 257, 261, 265, 298, 361, 415-16.)  The

15 ALJ determined that Plaintiff had the severe impairment of fibromyalgia.  (AR 16.)  Plaintiff

16 repeatedly and consistently complained to all medical sources of pain in her shoulders and

17 neck, muscle spasms, burning sensations, headache, fatigue, disturbed sleep, and soreness all

18 over her body.  (See, e.g., AR 108, 166, 177, 186, 194, 203, 419.)  These are common

19 symptoms of fibromyalgia.  She also reported difficulty walking, standing, and sitting for

20 sustained periods of time.  (AR 35, 42, 398, 409.)  She was prescribed the following

21 medications for her pain:  Lyrica, Cymbalta, Neurontin, Tramadol, Baclofen, Efflexor, Celebrex,

22 Ibuprofen, and Ultram.  (AR 42, 43, 112, 169, 318.)

23        Claimant had to cease work because of her pain.  One orthopedist put her off work (AR

24 174) and another, her primary treating orthopedist, Dr. Sabbag, evaluated Plaintiff repeatedly

25 as "temporarily totally disabled."  (AR 181, 187, 195, 204, 206, 214.)  Dr. Salick, the only

26 rheumatologist to see her, also concluded that she was temporarily totally disabled (AR 417)

27 and later conducted an RFC, finding restricted functioning that the vocational expert Lynne

28 Tracy testified would render her unable to work.  (AR 55-57.)

Unfortunately, because Plaintiff's injuries from the 2004 fall were industrial and her fibromyalgia was considered a preexisting non-industrial condition, she was seen by a series of orthopedists, psychologists, and psychiatrists primarily focused on her workers' compensation claim for cubital tunnel syndrome and cervical spine strain.  She was not seen by a rheumatologist initially.  Responding to a request for a rheumatological consult, the employer's claim representative on June 8, 2006, replied, "Please note that fibromyalgia is not an accepted body part on an industrial causation and your request for a consultation with a qualified rheumatologist is denied." (AR 199.)  Dr. Sabbag replied on June 26, 2006, that the issue of whether fibromyalgia may be industrially caused would be best answered by a rheumatologist because "[t]he causation of fibromyalgia is beyond my expertise." (AR 192.)  Dr. Sabbag again told the claims representative on November 22, 2006, "I have previously opined and continue to believe that a rheumatology evaluation for the fibromyalgia would be helpful." (AR 305.)  He wrote the claims representative on December 20, 2006, that "Ms. Olguin is plagued primarily by fibromyalgia." (AR 308.)  On March 20, 2007, Dr. Sabbag wrote that Claimant's "primary problem continues to be rheumatologic in nature and not orthopedic." (AR 313.)  On March 29, 2007, Dr. Sabbag wrote that Plaintiff's fibromyalgia is her "dominant problem and is best treated by a rheumatologist . . .  In terms of impairment, it is not clear to me how fibromyalgia should be rated." (AR 316.)

As a result, even though her treating orthopedic physician regarded her primary problem as fibromyalgia, it was not until August of 2007 that she finally was seen by a rheumatologist, Dr. Salick.  He is an Assistant Professor of Clinical Medicine at the UCLA School of Medicine, a Senior Attending Physician at Cedars-Sinai and a QME.  (AR 422.)  He confirmed that Claimant had fibromyalgia.  (AR 416.)  He performed three tenderpoint examinations.  (AR 401, 403, 413-14.)  Plaintiff had 18 of 18 tenderpoints on two occasions and 14 of 18 tenderpoints on a third examination.  (Id.)  He conducted an electrodiagnostic test and lab tests to rule out conditions other than fibromyalgia.  (AR 415-16.)  He also conducted a sleep disorder test. (AR 417.)  Dr. Salick conducted a fibromyalgia RFC (AR 397-99), concluding that Plaintiff had limitations that the vocational expert later testified would render her unable to work.  (AR 55-

57.)  Dr. Salick was the only rheumatologist who provided medical evidence in this case on Claimant's fibromyalgia and its impact on her ability to work.  Nonetheless, the ALJ rejected Dr. Salick's opinion and gave it little weight.

### 1.    The ALJ Erred In Rejecting Dr. Salick's Testimony

The ALJ's rejection of Dr. Salick's testimony was not based on clear and convincing or specific and legitimate reasons supported by substantial evidence.  A treating physician's diagnosis is entitled to greater weight than that of non-treating physicians.  Reddick v. Chater, 157 F.3d at 715, 725 (9th Cir. 1998); Smolen, 80 F.3d at 1285.  If uncontradicted, the ALJ may not reject the treating doctor's opinion without clear and convincing reasons supported by substantial evidence.  Reddick, 157 F.3d at 725.  Even if contradicted, the ALJ may not reject the treating physician's opinion without specific and legitimate reasons supported by substantial evidence.  Id.  In this case, rheumatology is the relevant specialty.  Benecke, 379 F.3d at 594.  A specialist's opinion is given greater weight on medical issues related to his or her specialty than a non-specialist.  Id.  In this case, Dr. Salick's opinion and RFC on fibromyalgia and its impact on Plaintiff's ability to work was uncontradicted.

The ALJ notes that a treating physician's opinion can be rejected if it is brief and conclusory with little in the way of clinical findings.  (AR 24.)  Dr. Salick's diagnosis and assessment of fibromyalgia was anything but brief and conclusory.  He reviewed the entire medical record, which consisted of 500 pages.  (AR 412.)  Three times, he conducted the tenderpoints analysis that is the accepted method for diagnosing fibromyalgia.  (AR 401, 403, 413-14.)  He conducted an electrodiagnostic test and lab tests to rule out possible conditions other than fibromyalgia.  (AR 415-16.)  He tested Claimant's sleep disorder.  (AR 417.)  He also completed an RFC on fibromyalgia that no other treating or examining physician did.  (AR 397-99.)  Dr. Salick did everything a rheumatologist could be expected to do in assessing Claimant's fibromyalgia and its impact on her ability to work.  Dr. Salick was the only physician who considered all the medical evidence in doing his RFC assessment, in that he accepted without comment the restrictions specified by the orthopedists and mental health professionals for

8

1  Plaintiff's other physical and mental impairments and then assessed her limitations resulting

2  from fibromyalgia that the other medical sources never considered.

3       The ALJ must provide clear and convincing or specific and legitimate reasons supported

4  by substantial evidence for rejecting Dr. Salick's opinion, which is the only evidence in the

5  record from a rheumatologist, the appropriate specialty for fibromyalgia.  At no point does the

6  ALJ recognize the importance of the distinction between Dr. Salick and the other non-

7  rheumatological medical sources who did not consider the impact of fibromyalgia on Plaintiff's

8  functioning.  Some of those medical sources openly admitted their lack of expertise in

9  evaluating fibromyalgia.  (AR 192, 298, 391.)

10      The ALJ's first basis for rejecting Dr. Salick's RFC assessment is that Dr. Salick "found

11  little in the way of objective findings to support his restrictive functional assessment" (AR 24)

12  "beyond several fibromyalgia tenderpoints" (AR 23).  This assertion fails as a matter of law.

13  There are no laboratory tests to confirm a diagnosis of fibromyalgia. Benecke, 379 F.3d at 589-

14  90.  The diagnosis is based on a patient's reports of pain.  Id.  The accepted diagnostic test is

15  at least 11 of 18 tenderpoints.  Jordan, 370 F.3d at 877.  Claimant had tenderness in 18 of 18

16  tenderpoints areas on two occasions and 14 of 18 on another visit.  (AR 401, 403, 413-14.)

17  Electrodiagnostic and lab tests ruled out other possible medical conditions.  (AR 415-16.)  This

18  was medical evidence of Plaintiff's fibromyalgia that no one disputes and that the ALJ

19  characterized as "severe."  It is generally the only medical evidence that is ever available to

20  establish fibromyalgia.

21      Also, the test in the Ninth Circuit for deciding whether to accept a claimant's subjective

22  symptom testimony turns on whether the claimant produces medical evidence of an impairment

23  that reasonably could be expected to produce pain or other symptoms alleged.  Reddick, 157

24  F.3d at 722; Smolen, 80 F.3d at 1282; Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986);

25  Bunnell, 947 F.2d at 346.  The Commissioner may not discredit a claimant's testimony on the

26  severity of his or her symptoms merely because that testimony is unsupported by objective

27  medical evidence.  Reddick, 159 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  Because

28  fibromyalgia cannot be confirmed by "objective" medical evidence and Claimant's testimony on

9

1  subjective testimony cannot be rejected for lack of objective medical evidence, the ALJ's

2  rejection of Dr. Salick's assessment for lack of "objective findings" cannot stand.  All the medical

3  professionals in this case (and the ALJ) agreed that Claimant has fibromyalgia.  Their opinions

4  are medical evidence of an impairment that reasonably could be expected to produce

5  Claimant's pain.  The lack of objective medical evidence does not constitute a clear and

6  convincing or specific and legitimate reason for rejecting Dr. Salick's RFC assessment.

7          The ALJ, moreover, seriously miscomprehended the medical evidence in stating, "Dr.

8  Salick also performed an electromyelogram study which yielded no signs of peripheral

9  neuropathy or other inflammatory process and laboratory studies yielded no signs consistent

10 with rheumatoid arthritis."  (AR 23.)  As Dr. Salick makes clear, these studies were done to rule

11 out conditions other than fibromyalgia (AR 415-16), which is standard procedure in diagnosing

12 fibromyalgia.  Jordan, 370 F.3d at 873, 877.  The ALJ erred in using the results of these studies

13 to establish a lack of objective evidence of the severity of Plaintiff's pain.  That was not the

14 purpose of those studies.

15         The ALJ's next argument is that Dr. Salick's RFC is not "compatible with the record as a

16 whole" and "is not supported by or consistent with the limitations assessed by any of the other

17 treating, examining or reviewing sources."  (AR 24, 25.)  The problem with this assertion is that

18 these other sources were orthopedists examining Claimant's other physical impairments or

19 psychologists and psychiatrists examining Claimant's mental impairments.  None of these

20 sources were rheumatologists, the appropriate specialty for fibromyalgia.  None purported to

21 evaluate Claimant's fibromyalgia because they considered it to be non-industrial and/or beyond

22 their expertise.  Her treating orthopedist Dr. Sabbag openly admitted that fibromyalgia was not

23 his area of expertise and repeatedly recommended that Plaintiff be approved to see a

24 rheumatologist.  (AR 192, 308, 313, 316.)  Dr. Sohn, the AME who also was an orthopedist,

25 specifically excluded fibromyalgia from his RFC assessment and deferred to a rheumatologist.

26 (AR 298.)  Psychologist Dr. Hyman disclaimed expertise about fibromyalgia and recommended

27 that a rheumatologist examine Plaintiff.  (AR 391.)  Dr. Marinow, also an orthopedist, regarded

28 fibromyalgia as non-industrial (ARE 268-69) and did not conduct the accepted examination for

1   fibromyalgia or lab tests to rule out other possible diseases or assess the impact of Plaintiff's

2   fibromyalgia on her ability to work.  (AR 256-72.)  Neither did any other medical source,

3   including the non-examining State agency medical consultants (AR 217-24, 252-53) who were

4   not rheumatologists and did not review the full medical history.  The assessment of non-

5   examining, non-specialist sources is given less weight than that of treating and examining

6   sources or specialists.  Lester, 81 F.3d at 830-31; Smolen, 80 F.3d at 1285-86.

7           The ALJ mischaracterized the medical evidence of record.  There is no inconsistency or

8   conflict between Dr. Salick's RFC which assessed Claimant's fibromyalgia in the appropriate

9   manner recommended by the American College of Rheumatology and the other medical

10  sources which did not purport to do so and did not think it necessary because it was considered

11  to be non-industrial for workers' compensation purposes.  Dr. Salick's RFC is uncontradicted as

12  to fibromyalgia and, as the only rheumatologist submitting medical evidence, his opinion as a

13  specialist must be given greater  weight as to fibromyalgia than the non-specialist medical

14  sources.

15          The ALJ also rejected Dr. Salick's RFC because of an inconsistency within his report, in

16  one place noting that Claimant had undergone surgery for cubital tunnel syndrome and in

17  another place stating that Claimant had not had any surgeries for that condition.  (AR 24-25.)

18  This observation is at best a minor criticism on a historical matter unrelated to Dr. Salick's

19  assessment of Claimant's fibromyalgia and in no way undermining of it.  If the ALJ thought the

20  record was ambiguous in a material way that might affect the disability determination, the ALJ

21  had the duty to develop the record fully and fairly to assure that Claimant's interests are

22  considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d at

23  1288; Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The Court does not regard the

24  inconsistency as material, nor a clear and convincing or specific and legitimate reason that

25  could support the ALJ's rejection of Dr. Salick's testimony.[1]

26  _____

27      [1]  Commissioner's counsel (JS 10) cites to an apparent inconsistency in Dr. Salick's treatment
    notes, which indicate that "funct capacity show able to do lite strength work like old job." (AR 403.)

28  The ALJ, however, did not cite or rely on this evidence in her decision.  Even were it to be

The ALJ's fourth reason is that Dr. Salick's RFC is based on Claimant's inconsistent subjective allegations that Dr. Salick accepted at face value without considering other factors, including other medical reports and opinions as well as the vocational factors involved.  (AR 25.)  The ALJ mischaracterized the evidence of record.  There is very little inconsistency in Claimant's reports of her pain and ability to perform normal daily activities, as addressed in Section 2 below.  The ALJ's assertion that Dr. Salick simply accepted Claimant's subjective allegations at face value is both untrue and irrelevant.  He performed three tenderpoints analyses, and conducted an electrodiagnostic test and lab tests to rule out causes other than fibromyalgia.  In any event, any diagnosis and RFC assessment of fibromyalgia necessarily must be based on the patient's reports of pain.  Benecke, 379 F.3d at 589-90.  It cannot be objectively proved.  Jordan, 370 F.3d at 877.  The record makes clear that Dr. Salick reviewed the entire medical record and did consider the other medical reports, contrary to the ALJ's assertion.  The ALJ's assertion that Dr. Salick accepted Claimant's reports of pain without considering other medical reports is contrary to the record and unsupported by substantial evidence.  Dr. Salick then proceeded to do an RFC on the impact of fibromyalgia on Claimant's ability to work that none of the other medical sources ever performed.  His was the only opinion to consider all factors.

The ALJ erred in rejecting Dr. Salick's opinion and RFC assessment.

## 2. The ALJ Erred in Discrediting Plaintiff's Subjective Condition Testimony

The ALJ erred in discrediting Plaintiff's subjective symptom testimony.  As already noted, Claimant produced medical evidence that reasonably could be expected to produce her pain.  The ALJ could not discredit her subjective testimony on the severity of her symptoms merely because that testimony was unsupported by objective medical evidence.  Reddick, 159 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  Unless there is evidence of malingering, the ALJ can reject

considered here, Commissioner's counsel misapprehends the note. Dr. Salick was referring to an August 21, 2007, report from another source. (Id.) Dr. Salick never saw Plaintiff on August 21, 2007 and he earlier on August 3, 2007 evaluated Plaintiff as temporarily totally disabled. (AR 417.) Thus, there is no inconsistency in Dr. Salick's own evaluation of Plaintiff.

Claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so."  Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1283-84.  The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In this case, there was no evidence of malingering.  The ALJ did not find malingering or even mention it.  Thus, the ALJ can reject Claimant's testimony on the severity of her pain only with "specific, clear and convincing reasons."

The ALJ determined that Claimant's testimony was not credible because of "significantly inconsistent statements regarding her ability to function and perform daily activities."  (AR 25.) The ALJ once again mischaracterizes the record evidence.  The perceived inconsistencies are not significant and, when viewed in context, are not materially inconsistent.

The primary evidence cited by the ALJ of "significantly inconsistent statements" by Plaintiff about her functioning is that she reported in 2006 (3E) that "she has no significant problems walking, sleeping, shopping, climbing stairs, cleaning her house, and driving."  (AR 25.)  The ALJ also states that "she reported being able to walk for 1.5 hours or up to 4 miles, climb stairs, lift no more than 10 lbs, and sleep 8-9 hours."  (AR 22.)  These statements, says the ALJ, conflict with the seriously restricted functioning reported to Salick and described at the hearing.  (AR 25.)

The ALJ mischaracterizes 3E and takes Plaintiff's comments out of context.  3E is an Exertional Daily Activities Questionnaire that Plaintiff signed on July 29, 2006.  (AR 118-120.) She first states that she is prevented from carrying out her normal workday by shooting, throbbing pain from her neck through her arms and back and by burning sensations throughout her body, especially in her back and arms.  (AR 118.)  She next says that light household chores and driving to and from doctor appointments are done with great pain, stress, and fatigue.  (Id.)  She says she walks when she feels she can because it is recommended for her fibromyalgia.  (Id.)  She has walked 4 miles in 1 1/2 hours.  (Id.)  She has to climb stairs to get to her apartment which irritates the burning sensation in her legs.  (AR 119.)  She can lift light weight items less than 10 pounds but repetition causes pain.  (Id.)  She carries a grocery bag to

1   her apartment but only by holding it against her body.  (Id.)  She does her own shopping, but

2   her son carries heavy items.  (Id.)  She does some laundry and light dusting, but her son also

3   helps carry things to the laundry.  (Id.)  She drives a car about half an hour.  (Id.)  She does no

4   yard work.  (Id.)  She has difficulty finishing housework if her fibromyalgia flares up.  (AR 120.)

5   She can sleep 8-9 hours but less than 4-5 hours if she is unable to sleep due to pain.  (Id.)  She

6   requires rest periods or naps during the day of 1/2 to 2 hours.  (Id.)  She also stated that she is

7   unable to focus due to pain and stress, and "some days I wake up extremely sore unable to get

8   up right away.  I require extensive stretching before and after sitting for long periods."  (Id.)

9       These comments by Plaintiff bear little resemblance to the description of them given by

10  the ALJ.  Plaintiff, moreover, was filling out a government form that asked but a limited number

11  of questions.  This was not a doctor's exam.

12      Plaintiff's comments are not materially inconsistent with her statements to Dr. Salick or at

13  the hearing or at any other time.  In 1E she stated, "I have pain all over my body, sharp pain on

14  my hands and forearms."  (AR 108.)  In 5E, Claimant says she needs help getting dressed.

15  (AR 127.)  In 7E, she says she needs help taking a bath or shower.  (AR 136.)

16      In September 2005, Plaintiff complained of neck, shoulder, and back pain and pain in

17  both forearms.  (AR 177.)  She described the pain as sharp and constant, with burning

18  sensation, numbness, and swelling in both arms.  (Id.)  She reported that lifting, carrying, typing

19  and grasping aggravates the pain.  She was not responding to conservative treatment.  (Id.)

20  She continually reported chronic pain and "difficulty in maintaining a tolerable pain level" to Dr.

21  Grewal and Dr. Dye throughout 2005.  (AR 175, 171, 169, 166.)

22      Her primary treating orthopedist Dr. Sabbag noted on June 25, 2006 (very close in time

23  to 3E), that Claimant reported persistent neck pain radiating down her arms, difficulty finding a

24  comfortable position when trying to sleep, and that the severity of the pain waxes and wanes.

25  (AR 203.)  Therapy had been denied.  (Id.)  On December 20, 2006, Plaintiff told Dr. Sabbag

26  that "the problem she has waxes and wanes" and that over the past week she had "an acute

27  exacerbation of her fibromyalgia."  (AR 307.)

28

Dr. Grewal and Dr. Dye reported in mid-2006 that Plaintiff had difficulty maintaining a tolerable pain level even with medications.  (AR 330, 333, 337.)  In November, Dr. Grewal and Dr. Dye reported, "She is having difficulty adjusting to this constant pain."  (AR 344.)

She reported to psychologist Dr. Ruth Hyman on August 14, 2007, that, on a scale of one to ten, she suffered a level of ten at worst, five at best, and seven on an average day.  (AR 359.)  Plaintiff's description of her daily activities to Dr. Hyman is remarkably similar both to 3E and the descriptions she gave to Dr. Salick and at the hearing:

> Physically, Ms. Olguin reported suffering from pain in her neck, shoulders and lower back, as well as both of her upper and lower extremities.  In addition, she experiences numbness in her right arm.  She suffers from headaches three or four times per week.  She also complained of episodes of loss of balance, muscle tension, excessive sweating, difficulty urinating, diarrhea, a dry mouth, and general weakness and fatigue . . .

> Activities that cause exacerbations of her pain include remaining in any position for extended periods of time, performing repetitive activities with her hands (such as clapping in church), and anything involving physical exertion . . .

> Ms. Olguin indicated that her pain interferes with her ability to perform her activities of daily living.  For example, she can no longer blow dry her hair, as she cannot keep her arms raised up long enough to do this.  Washing herself is sometimes painful for her.  It now takes her longer to get dressed.  She can do some light housecleaning if she works very slowly, but she can no longer vacuum her home.  She tends to prepare simple meals and use paper plates more often because her pain is exacerbated by cooking activities and washing dishes.  She can shop and run errands as long as she does so in short trips.  She can only drive for short distances because longer trips exacerbate the pain in her arms and back.  She is able to sit, stand, walk and bend if she does so slowly and takes frequent breaks,

1   but such activities "take a toll" on her body.  She is not able to exercise

2   beyond taking brief walks.  Her sleep is also disrupted by her pain.

3   Dr. Hyman viewed Plaintiff's pain as outside her expertise (AR 385, 391) and concluded that

4   the impact of the 2004 fall on her fibromyalgia should be addressed by a rheumatologist.  (Id.)

5        In August of 2007, she told Dr. Salick she had pain in her entire body, numbness,

6   tingling, muscle spasms, fatigue, difficulty with daily activities, cannot sit for more than 30

7   minutes without pain, difficulty driving for prolonged periods, morning stiffness.  (AR 409.)  In

8   January of 2008, Dr. Salick reports multiple tenderpoints, morning stiffness, irritable bowel

9   syndrome ("IBS"), chronic fatigue, non-restorative sleep and muscle weakness.  (AR 397.)  He

10  reports that Plaintiff had pain throughout her body.  (Id.)

11       There was nothing new in what she reported to Dr. Salick or mentioned at the hearing

12  except for the IBS.  The ALJ's assertion that the pain and limited functioning described to Dr.

13  Salick was not described to other medical sources (AR 23) is plainly contrary to the record and

14  unsupported by substantial evidence.

15       There is no significant inconsistency in Plaintiff's statements from 2004-2008.  She

16  repeatedly and consistently reported to medical professionals difficulty in performing daily

17  activities, with significant difficulties in walking, sitting and standing for extended periods of time.

18  She made clear that her problem waxed and waned, impacting her functioning more on some

19  days than others.  (AR 203, 307, 399.)  According to the American College of Rheumatology, a

20  characteristic of fibromyalgia "is the waxing and waning and intensity of the symptoms with

21  good days and bad days."  (AR 419.)  See also Jordan, 370 F.3d at 873.

22       The ALJ also questions Plaintiff's credibility because she never received more than

23  conservative treatment and no treating or examining source recommended surgery.  These are

24  legally inadequate reasons to find Plaintiff not credible.  There is no cure or known surgical

25  treatment for fibromyalgia.  Benecke, 379 F.3d at 589-90.  Treating sources, moreover, made

26  clear that conservative treatment had not been effective.  (AR 179.)  It is not Plaintiff's fault that

27  there is no accepted, aggressive treatment protocol that could be expected to relieve her pain.

28

16

1   The ALJ is also wrong that there was no event causing Plaintiff's condition to worsen.  Dr.

2   Salick determined that her fibromyalgia became worse because of the 2004 fall.  (AR 416.)

3   Plaintiff was not even approved to see a rheumatologist until 2007.

4        The ALJ erred in rejecting Plaintiff's subjective testimony on the severity of her pain.  The

5   ALJ's reasons for rejecting Plaintiff's testimony were not specific, clear or convincing or

6   supported by substantial evidence.

7        **3.    The ALJ Erred In Concluding That Plaintiff Was Able to Engage In**

8            **Alternative Employment**

9        The ALJ, having determined that Plaintiff's severe impairments render her unable to do

10  her past relevant work, had the burden to establish that Claimant is able to engage in

11  alternative work.  The ALJ utilized the Medical Vocational Guidelines or "grids" as a framework

12  for decision-making.  (AR 27.)  The Guidelines, however, are primarily designed for exertional

13  limitations and physical impairments, and not necessarily appropriate or sufficient for pain and

14  other non-exertional limitations, as the ALJ recognized.  Id.; see Hoopai v. Astrue, 499 F.3d

15  1071, 1075 (2007) (grids are inapplicable when non-exertional limitations are sufficiently

16  severe).  Vocational testimony is therefore required.  (Id.)

17       In this case, two non-exertional limitations are present – the pain from Claimant's

18  fibromyalgia and depressive disorder.  Accordingly, the ALJ posed hypothetical questions to

19  independent vocational expert Lynne Tracy.  (AR 27.)  The hypotheticals posed to the

20  independent vocational expert, however,  reflect only the limitations credited by the orthopedists

21  and mental health professionals for Plaintiff's cubital tunnel syndrome, cervical spine strain, and

22  depressive disorder.  (AR 51-54.)  The sources who provided those limitations did not consider

23  the impact of Claimant's fibromyalgia on her ability to work.  It was error for the ALJ not to

24  consider the impact of Plaintiff's  fibromyalgia in his RFC decision.  Magellanes v. Brown, 881

25  F.2d 747, 756 (9th Cir. 1989) (hypothetical questions to vocational expert must contain all the

26  limitations of a claimant).

27       The ALJ had a duty to develop the record fully and fairly.  Tonapetyan, 242 F.3d at 1150.

28  The ALJ also is required to consider whether the combination of all impairments are severe

1   enough to be disabling.  A claimant's illness "must be considered in combination and must not

2   be fragmentized in evaluating their effects."  Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir.

3   1985) (quoting Dressel v. California, 558 F.2d 504, 508 (8th Cir. 1997).  An ALJ must consider

4   the combined effect of all of a claimant's impairments on his or her ability to function without

5   regard to whether each alone was sufficiently severe.  Smolen, 80 F.3d at 1290.  The ALJ failed

6   to consider the impact of all of Plaintiff's impairments in combination.

7          Even if Dr. Salick's RFC and Plaintiff's testimony regarding the severity of her symptoms

8   were rejected, the ALJ's RFC would remain invalid because of the failure to consider Claimant's

9   fibromyalgia.  The ALJ had a duty to develop the record.  Tonapetyan, 242 F.3d at 1150.  If the

10  ALJ had questions about Dr. Salick's opinion and RFC, the ALJ could have re-contacted

11  Dr. Salick or requested his testimony.  More importantly, the ALJ could have retained another

12  rheumatologist.  The ALJ's RFC does not meet the Commissioner's burden of persuasion.

13         The ALJ, moreover, relegated the only rheumatological evidence on the impact of

14  Plaintiff's fibromyalgia on Claimant's RFC to a footnote.  (AR 27, n.6.)  Plaintiff's counsel posed

15  hypotheticals to the vocational expert based on Dr. Salick's RFC.  (AR 55-57.)  The vocational

16  expert testified that the limitations determined by Dr. Salick would render Plaintiff unable to

17  perform any gainful activity.  (Id.)  This conclusion of disability deserved more than a footnote.

18         The ALJ gave no weight to the vocational expert's testimony of total disability "'insofar as

19  the hypotheticals . . .  are unsupported by the record," and "[no] treating or examining source

20  has restricted the claimant to such a degree."'  (AR 27, n. 6.)  Again, however, these other

21  medical sources never purported to consider the impact of Plaintiff's fibromyalgia on her ability

22  to function and to engage in alternative work, and thus cannot constitute substantial evidence or

23  meet the ALJ's burden as to fibromyalgia.

24         The ALJ also gave no weight to the vocational expert's disability conclusion because the

25  ALJ regarded Dr. Salick's restrictive assessment as "not credible."  (Id.)  Again, the ALJ's

26  rejection of Dr. Salick's opinion and RFC is unsupported by clear and convincing or specific and

27  legitimate reasons based on substantial evidence.

28

1   The ALJ gave no weight to the vocational expert's disability determination because the
2   limitations in the hypothetical derive from Claimant's testimony on the severity of her pain.  (Id.)
3   The ALJ earlier had determined that Plaintiff's subjective testimony about the severity of her
4   pain was unsupported by medical evidence and based on inconsistencies in Plaintiff's
5   statements about her ability to function in daily life.  As already noted, these determinations
6   were legal error and not unsupported by substantial evidence.

7   The ALJ has not met the Commissioner's burden to establish that Plaintiff is able to
8   work.  The ALJ decision does not provide legally sufficient reasons for rejecting Plaintiff's
9   evidence and testimony regarding the severity of her pain and her functional limitations, which
10  must be accepted.  Benecke, 379 F.3d at 594, Harman, 211 F.3d at 1179.

11                                                  **DISPOSITION**

12  The choice of whether to reverse and remand for further administrative proceedings or to
13  reverse and remand for an immediate award of benefits is within the discretion of the Court.
14  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where
15  additional proceedings would remedy defects in the ALJ's decision and where the record should
16  be developed more fully.  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

17  Where the record has been developed fully and further administrative proceedings would
18  serve no useful purpose, the case should be remanded for an immediate award of benefits.
19  Benecke, 379 F.3d at 593.  More specifically, a court should credit the evidence rejected by the
20  ALJ and remand for award of benefits if:  (1) the ALJ failed to provide legally sufficient reasons
21  for rejecting Plaintiff's evidence; (2) there are no outstanding issues to be resolved; and (3) it is
22  clear that the ALJ would be required to find Claimant disabled if Plaintiff's evidence were
23  credited.  Id.

24  Here, the Court sees no purpose to remanding for further proceedings.  The ALJ did not
25  meet the Commissioner's burden to prove that Claimant is able to perform other work or
26  provide legally adequate reasons for rejecting Plaintiff's evidence and testimony.  The testimony
27  of Dr. Salick regarding fibromyalgia and the vocational expert's disability conclusion based on
28  Dr. Salick's limitations must be accepted.  So must Plaintiff's subjective pain testimony.  There

are no outstanding issues because, if Plaintiff's evidence is credited, the ALJ would be required to find Plaintiff disabled.  Therefore, the Court finds that an award of benefits is appropriate.

<b>ORDER</b>

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for an immediate award of benefits.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  December 2, 2009

                                                    /s/
                                        JOHN E. MCDERMOTT
                                        UNITED STATES MAGISTRATE JUDGE